**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

TERRACE ELLIS, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

UNITEDHEALTH GROUP INC.,

Defendant.

Case No. 26-cv-1926 (LMP/SGE)

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

---

E. Michelle Drake and John G. Albanese, **Berger Montague PC, Minneapolis, MN**; William Peerce Howard, **The Consumer Protection Firm, Tampa, FL**; and Alexander H. Burke, **Burke Law Offices, LLC, Evanston, IL**, for Plaintiff.

Anthony Ufkin, **Hogan Lovells US LLP, Minneapolis, MN**; Carolyn A. DeLone and Victoria L. Glover, **Hogan Lovells US LLP, Washington, D.C.**, for Defendant.

Determining which agreement governs a dispute can become a dispute in its own right. Defendant UnitedHealth Group Inc. ("United") asserts that this lawsuit is governed by a terms of service agreement executed by Plaintiff Terrace Ellis, which contains an arbitration provision and a class action waiver. Ellis, on the other hand, points to a different terms of service agreement, which does not contain these provisions.

On this record, United has the better argument. And because this dispute falls within the broad arbitration provision contained in that terms of service agreement, the Court grants United's motion to compel arbitration and stays this case pending individual arbitration.

## BACKGROUND

***Ellis's Agreements with United***

Ellis enrolled in a health insurance plan with United in December 2018, which she maintained without break until March 2025. ECF No. 20 ¶¶ 4–5. On October 26, 2021, Ellis created an online HealthSafe ID ("HSID") account to allow her to manage her plan benefits. *Id.* ¶ 9. To set up an HSID account, a user must agree to certain United policies and confirm a phone number for identity verification. *Id.* ¶¶ 10–11. When Ellis created her HSID account, she provided a phone number and agreed to United's "Online Services" Terms of Use, among other policies, that were on the HSID website. *Id.*

The Online Services Terms of Service in effect on October 26, 2021 ("2021 TOS"), contained an arbitration provision. Specifically, the 2021 TOS required that Ellis "agree to resolve any claims relating to these Terms, or the Online Services, through final and binding arbitration." ECF No. 20-3 at 7. The 2021 TOS also contain a class action waiver, which provides that

> BY AGREEING TO THIS ARBITRATION AGREEMENT, YOU ARE GIVING UP YOUR RIGHT TO GO TO COURT, INCLUDING YOUR RIGHT TO A JURY TRIAL AND TO PARTICIPATE IN A CLASS ACTION. YOU UNDERSTAND THAT BY AGREEING TO THIS ARBITRATION AGREEMENT AND CLASS ACTION WAIVER, YOU MAY ONLY BRING CLAIMS AGAINST US AND OUR RELATED PARTIES IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING. IF YOU DO NOT AGREE TO ARBITRATION, YOU SHOULD OPT OUT OF THIS ARBITRATION PROVISION PER THE TERMS. OTHERWISE, YOU ARE NOT AUTHORIZED TO USE THE ONLINE SERVICES IN ANY WAY.

*Id.* at 8–9. The 2021 TOS also contemplate that the Online Services Terms of Service could be modified by United. The 2021 TOS explain that United could "change these Terms at any time, and such changes will be posted on the Online Services, with the date of the last revision listed as the 'Effective Date' at the bottom of these Terms." *Id.* at 2. The 2021 TOS explain that any such modifications would be "effective immediately upon such posting," and that by "continuing to use the Online Services, [Ellis] consent[s] to any changes to [United's] Terms." *Id.*

When enrolling for an HSID account, Ellis also had to agree to United's Consumer Communications Notice, in which Ellis agrees that United "may contact [her], using automated, pre-recorded, or non-automated means, to provide [her] information about existing benefits, programs, products, services, or tools." ECF No. 20 ¶ 10; ECF No. 20-5 at 3.

United amended its Online Services Terms of Service in 2022. *See* ECF No. 20-7 ("2022 TOS"). The 2022 TOS state that they constitute "the entire agreement between [Ellis] and [United] in connection with the Online Services and supersede all previous written or oral agreements." *Id.* at 10. The 2022 TOS contain an arbitration provision and class action waiver substantively similar to the 2021 TOS. *Id.* at 7–9. The 2022 TOS also provide that they can be modified by United "at any time," become effective upon posting the new terms of service on the Online Services, and that by continuing to use the Online Services, Ellis consented to any changes to the 2022 TOS. *Id.* at 2. United's records show that Ellis agreed to the 2022 TOS and the Consumer Communications Notice when she signed into her HSID account on November 21, 2022. ECF No. 20 ¶¶ 14–16.

From here, the facts get a bit fuzzy. According to United, the 2022 TOS remained on the HSID website until June 18, 2025. ECF No. 41 at 3 n.2; ECF No. 45 ¶ 2; *see also* ECF No. 42 ¶ 9 ("Between November 21, 2022 and the date of this declaration, the HSID Terms have always contained an arbitration clause and class action waiver substantially similar to the arbitration clause and class action waiver Plaintiff agreed to on November 21, 2022."). On June 18, 2025, United amended the terms of service on the HSID website, creating a terms of service unique to the "HealthSafe ID" ("2025 TOS"). ECF No. 42 ¶¶ 4, 8; *see* ECF No. 45 ¶ 3. The 2025 TOS contain an arbitration provision and class action waiver substantively similar to the 2021 TOS and 2022 TOS. ECF No. 42-1 at 11–14.

For her part, Ellis observes that United apparently modified the Online Services Terms of Service in 2023. *See* ECF No. 37-1 ("2023 TOS"). The 2023 TOS, unlike the 2021 TOS, 2022 TOS, and 2025 TOS, do not contain an arbitration provision or a class action waiver. *See generally id.* But like those terms of service, the 2023 TOS state that they constitute "the entire agreement between [Ellis] and [United] in connection with the Online Services and supersede all previous written or oral agreements." *Id.* at 6. United states, however, that the 2023 TOS were not posted on the HSID website but instead were posted on United's homepage and therefore applied to "internet users that browse UHC.com." ECF No. 42 ¶¶ 4–5.

***Ellis Begins Receiving Phone Calls From United and Brings Suit***

Ellis's problems with United started in 2024. She alleges that, starting on or around May 6, 2024, she began receiving automated phone calls from a United subsidiary called AbleTo about benefits included in her health plan. ECF No. 1-1 ¶¶ 31–34. These calls

lasted until January 17, 2025. ECF No. 21 ¶ 11. Ellis further alleges that she never provided authorization or consent to United to make these calls and that her telephone number is listed on the National Do Not Call Registry. ECF No. 1-1 ¶¶ 40–43, 71–77, 81. Ellis accordingly brought this action, alleging that the calls she received from United through AbleTo violated the Telephone Consumer Protection Act. *Id.* ¶¶ 70–82. Ellis seeks to represent two nationwide classes: (1) all persons within the United States who were listed on the National Do Not Call Registry and received two or more similar automated calls from United within the last four years during a 12-month span; and (2) all persons within the United States who received similar automated calls from United within the last four years and did not provide "prior express consent" to receive such calls. *Id.* ¶ 59.

United moved to compel arbitration, arguing that the arbitration provision in the 2022 TOS governs this dispute. *See* ECF No. 19 at 9. United seeks to stay this case pending individual arbitration. *Id.* at 2. Ellis, on the other hand, claims that the 2023 TOS—which lacks an arbitration provision—govern this dispute. ECF No. 36 at 5.

## ANALYSIS

The Federal Arbitration Act ("FAA") allows parties to use arbitration, instead of lawsuits, to resolve their disputes. *See* 9 U.S.C. § 2. The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

## I. Whether the 2022 TOS or 2023 TOS Apply to This Dispute

Arbitration is "a matter of contract," and a party "cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Art Etc. LLC v. Angel Gifts, Inc.*, 686 F.3d 654, 656 (8th Cir. 2012) (citation omitted). Whether an agreement to arbitrate exists is a matter of state law. *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022). The parties agree that Minnesota law applies. ECF No. 19 at 9; ECF No. 36 at 9.

That's largely where the parties' consensus ends. In Ellis's view, the 2022 TOS, which relate to the use of United's "Online Services," were amended by the 2023 TOS, which also relate to the use of United's "Online Services." *See* ECF Nos. 20-7, 37-1. Indeed, the 2022 TOS and 2023 TOS look remarkably similar—except, of course, for the lack of an arbitration provision and class action waiver in the 2023 TOS. *See* ECF Nos. 20-7, 37-1. Ellis observes that the 2022 TOS provide that they can be modified by United "at any time," become effective upon posting the new terms of service on the Online Services, and that by continuing to use the Online Services, Ellis consented to any changes to the 2022 TOS. ECF No. 20-7 at 2. So, in Ellis's view, United amended the 2022 TOS with the 2023 TOS, and Ellis consented to those changes by continuing to use her HSID account until 2025.

Not so fast, says United. It observes that the 2022 TOS remained on the HSID website until June 18, 2025. ECF No. 42 ¶ 9; ECF No. 45 ¶ 2. On that date, United issued the 2025 TOS, which contain an arbitration provision and class action waiver substantively similar to the 2021 TOS and 2022 TOS. ECF No. 45 ¶ 3; ECF No. 42-1 at 7–10. United asserts that at all times relevant to this lawsuit, the TOS on the HSID website contained an

arbitration provision and class action waiver substantively similar to the 2021 TOS and 2022 TOS. ECF No. 42 ¶ 9. United argues that the 2023 TOS could not have applied to Ellis's use of her HSID account because the 2023 TOS were listed on United's general homepage, not the HSID webpage. ECF No. 41 at 2. So, United argues that the 2022 TOS—which were on the HSID webpage during the period relevant to this lawsuit—apply to Ellis's claims and mandate arbitration.

Ellis's argument, in essence, is that the 2022 TOS were a contract that could be unilaterally modified by United and accepted by Ellis's continued use of her HSID account. ECF No. 36 at 5–8. That argument resonates in Minnesota case law relating to employment contracts. *See Roberts v. Brunswick Corp.*, 783 N.W.2d 226, 232–33 (Minn. Ct. App. 2010) (noting that, if an employment contract existed, the employer "effectively modified it" pursuant to a change-in-terms clause, and employees "accepted the modifications because [they] continued to work"); *see also Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). And at least one decision in this District has applied these principles to change-in-terms provision of a business's terms of service. *See Rasschaert v. Frontier Commc'ns Corp.*, No. 12-cv-3108 (DWF/JSM), 2013 WL 1149549, at *6–8 (D. Minn. Mar. 19, 2013) (holding that a change-in-terms provision in a business's terms of service allowed the business to unilaterally add an arbitration provision to its terms of service).

That said, whether United actually modified its terms of service for HSID users boils down to United's intent, as expressed in its "objective manifestations." *See Brodsky v. Brodsky*, 639 N.W.2d 386, 392 (Minn. Ct. App. 2002) (citation omitted); *see also Mettille*, 333 N.W.2d at 626. Ellis surmises that United must have intended to modify the terms of

service for HSID users because both the 2022 TOS and the 2023 TOS relate to United's "Online Services" and appear remarkably similar. ECF No. 36 at 5–9. In Ellis's view, then, the 2023 TOS must be the successor to the 2022 TOS.

Naturally, one would expect that the 2023 TOS, which relate to the use of United's "online and mobile websites, platforms, services and applications," would have replaced the 2022 TOS, which also relate to the use of United's "online and mobile websites, platforms, services and applications." ECF No. 20-7 at 2; ECF No. 37-1 at 2. As a general matter, then, it seems that the 2023 TOS served as a modification of the 2022 TOS.

But the record evidence in its totality does not demonstrate United's "objective manifestation[]" to replace the 2022 TOS with the 2023 TOS *for HSID users*. *Brodsky*, 639 N.W.2d at 392. Driving that conclusion is the fact that while the 2023 TOS were posted on UnitedHealthcare's general homepage, the 2022 TOS remained on the HSID webpage until June 18, 2025. ECF No. 42 ¶¶ 7, 9. Accordingly, whatever modification the 2023 TOS were supposed to bring about for users perusing UnitedHealthcare's website, it is evident from United's outward, objective conduct that it did not intend for the 2023 TOS to modify the terms of use for its HSID platform. Rather, United intended the 2022 TOS, and later the 2025 TOS, to govern use of the HSID platform.

Also relevant is the fact that upon logging in to the HSID website, HSID users were prompted to re-consent to terms of service agreements when there were material changes to those policies. ECF No. 20 ¶ 12. Indeed, Ellis explicitly agreed to the amended 2022 TOS when she signed into her HSID account on November 21, 2022. *Id.* ¶¶ 14–16. Yet Ellis was never prompted to re-consent to the 2023 TOS, adding yet another piece of

evidence suggesting that United did not intend for the 2023 TOS to govern its relationship with HSID users.

These unique facts distinguish this case from the ones cited by Ellis. In *Dasher v. RBC Bank (USA)*, a consumer entered into an account agreement with its bank, RBC, that contained an arbitration provision. 745 F.3d 1111, 1113–14 (11th Cir. 2014). Then PNC, another bank, acquired RBC and issued a new account agreement to the consumer, which the consumer accepted. *Id.* at 1114. PNC's agreement, unlike RBC's agreement, was silent as to arbitration. *Id.* The Eleventh Circuit observed that RBC's agreement authorized RBC (and its successor, PNC) to change "any part or parts" of the account agreement at any time, and that those modifications would "supersede[] all prior versions" of the account agreement. *Id.* at 1117. The Eleventh Circuit concluded that by issuing a new account agreement, PNC had expressed a "clear and definite intent to execute a new contract to supersede" RBC's agreement and had consequently "entirely superseded" RBC's agreement. *Id.* at 1117–18. In this case, there is evidence that the 2023 TOS in some way superseded the 2022 TOS. But by maintaining the 2022 TOS on the HSID website until 2025, United has not expressed a "clear and definite intent" to supersede the 2022 TOS as to HSID users. *Id.* at 1117. If anything, the 2023 TOS only partially superseded the 2022 TOS—that is, superseded as to general browsers on UnitedHealthcare's website, but not as to HSID users.[1]

---

[1] It is undisputed that HSID users can access the HSID website without navigating to UnitedHealthcare's website.

Consider next *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, in which two businesses entered into an engagement agreement that contained an arbitration provision. 645 F.3d 522, 523 (2d Cir. 2011). The engagement agreement contemplated that the parties would later enter into a formal agreement setting forth the parties' duties; that later agreement did not contain an arbitration provision but instead required disputes to be resolved in court. *Id.* The Second Circuit held that the engagement agreement's arbitration provision had been superseded by the later agreement's requirement to litigate disputes in court. *Id.* at 525. In so holding, the Second Circuit observed that the two agreements' provisions "are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Id.* Here, however, by posting the 2022 TOS on the HSID website while posting the 2023 TOS on UnitedHealthcare's general homepage, the agreements "admit[] the possibility of the other": the 2022 TOS for HSID users and the 2023 TOS for general visits to UnitedHealthcare's website. *Id.*

Recall that Ellis began receiving automated phone calls from United on May 6, 2024, and stopped receiving them on January 17, 2025. ECF No. 1-1 ¶ 31; ECF No. 21 ¶ 11. During that period, then, the 2022 TOS governed use of Ellis's HSID account, given that the 2022 TOS remained on the HSID website from November 21, 2022, to June 18, 2025. ECF No. 45 ¶ 2. And because the 2022 TOS contain an arbitration provision and class action waiver, ECF No. 20-7 at 7–9, those provisions apply to this case.

**II. Whether This Dispute Falls Within the 2022 TOS's Arbitration Provision**

Having concluded that the 2022 TOS govern Ellis's use of her HSID account at the times relevant to this lawsuit, the Court must next determine whether this dispute falls

within the arbitration provision in the 2022 TOS. The federal law of arbitrability governs whether a dispute falls within the scope of an arbitration agreement. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). When a valid arbitration agreement exists, a court must "liberally construe" it and resolve any doubts "in favor of arbitration," unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[2] *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (citation omitted).

The threshold question in this analysis is whether the arbitration provision is narrow or broad. *Id.* The arbitration provision in the 2022 TOS provides that Ellis and United "agree to resolve any claims relating to [the TOS], or the Online Services, through final and binding arbitration." ECF No. 20-7 at 7. This arbitration provision is broad because it covers claims "relating to" the TOS or the Online Services. *See Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad."). In applying a broad arbitration provision, a court asks whether "the underlying factual allegations simply touch matters covered by the arbitration provision." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 875 (8th Cir. 2018) (citation omitted). When answering that question, a court looks at the "underlying

[2] In its reply brief, United argues in passing that the 2022 TOS delegate questions of arbitrability to an arbitrator. ECF No. 41 at 6 n.6. Although that argument is forfeited because it was raised for the first time in United's reply brief, *see Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1285 n.11 (D. Minn. 2020), the Court need not address it because the Court agrees that Ellis's claims are subject to arbitration.

factual allegations" in the complaint to determine whether they fall within the scope of the arbitration provision. *Id.* (citation omitted).

That standard is met. The 2022 TOS require arbitration of any dispute "relating to" the "Online Services." ECF No. 20-7 at 7. Online Services are defined as United's "online and mobile websites, platforms, services and applications." *Id.* at 2. Here, Ellis alleges that she received unsolicited robocalls from United without her consent. ECF No. 1-1 ¶¶ 31–34, 40–43, 71–77, 81. United says that Ellis *did* consent to receiving those calls by enrolling in an HSID account, which required Ellis to provide a phone number and agree to United's Consumer Communications Notice, which allows United to contact Ellis "using automated, pre-recorded, or non-automated means" to provide her information about her benefits. ECF No. 19 at 12; *see* ECF No. 20-5 at 3. No one disputes that the HSID account is one of United's "Online Services." Altogether, then, the threshold issue of this lawsuit—whether Ellis consented to the robocalls—will revolve around the Consumer Communications Notice she agreed to when using one of United's "Online Services." Because a resolution of that threshold issue "depends on" determining whether Ellis's use of the Online Services evidenced consent, her claims are subject to arbitration. *Leonard v. Del. N. Cos. Sport Serv., Inc.*, 861 F.3d 727, 730 (8th Cir. 2017).

Ellis offers a handful of responses, but each misses the mark. Ellis first argues that the Eighth Circuit's "simply touch" analysis has been abrogated by more recent Supreme Court precedent. ECF No. 36 at 10 n.9. Whatever the merits of that argument, this Court is bound by the Eighth Circuit's "simply touch" analysis until the Supreme Court or the en banc Eighth Circuit says otherwise. *See Valspar Corp. v. PPG Indus., Inc.*, No. 16-cv-1429

(SRN/SER), 2017 WL 3382063, at *3 (D. Minn. Aug. 4, 2017) (articulating this rule and explaining that it applies even if it appears the Eighth Circuit's decision "conflicts with Supreme Court precedent"); *see also Vondeylen v. Aptive Env't, LLC*, No. 24-3578, 2026 WL 621880, at *1 (8th Cir. Mar. 5, 2026) (declining to address whether the "simply touch" inquiry has been abrogated).

Ellis next cites two cases that required arbitration of disputes relating to the "agreement" at issue. *See Anderson v. Hansen*, 47 F.4th 711, 713–14 (8th Cir. 2022) (requiring arbitration of "any dispute arising under or related in any way to this Agreement"); *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 809 (8th Cir. 2017) (requiring arbitration of "any controversy arising out of or relating to this Agreement"). Had the 2022 TOS only required arbitration of disputes related to the "terms of service," these cases might have been relevant. But the 2022 TOS are broader than the agreements in *Anderson* and *Rozeboom*; it requires arbitration of all disputes related not only to the terms of service, but also the "Online Services." ECF No. 20-3 at 7. It is in this latter portion of the arbitration provision that Ellis's claims fall. *See Anderson*, 47 F.4th at 718 (highlighting the "limiting language" in the arbitration provision that required arbitration only of matters that related to the agreement).

Ellis finally resorts to policy arguments, asserting that United's argument "leads to absurd consequences" because it "renders any dispute where United intends to use the Consumer Communications Notice, no matter how specious or meritless, into a dispute about the consumer's use of United's 'Online Services.'" ECF No. 36 at 13. But the Consumer Communications Notice did not just come out of nowhere. Rather, Ellis agreed

to it only because she registered for an HSID account—indisputably, one of United's "Online Services." ECF No. 20 ¶ 10; ECF No. 20-5 at 3. And, at least at first glance, United's reliance on the Consumer Communications Notice in this case seems far from "specious or meritless." To the extent that the Consumer Communications Notice does not evidence Ellis's consent to receive robocalls, that is a merits question properly reserved to the arbitrator, not this Court. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) ("In conducting an inquiry into whether claims come within the arbitration clause, the district court does not reach the potential merits of any claim . . . ."). Suffice to say that, after liberally construing the 2022 TOS's arbitration provision and resolving all doubts in favor of arbitration, *see Unison Co.*, 789 F.3d at 818, Ellis's claims "simply touch" her use of United's Online Services, *Parm*, 898 F.3d at 875. That conclusion compels arbitration.[3] The Court will therefore grant United's motion and stay this case pending individual arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration . . . the FAA compels the court to stay the proceeding.").

## CONCLUSION

For these reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[3] United asks the Court to enforce the class action waiver in the 2022 TOS and compel individual arbitration. ECF No. 19 at 15. Ellis does not contest that, if the 2022 TOS apply to this suit, then the class action waiver does, too. The Court agrees with United that because the 2022 TOS apply to Ellis's claims, the class action waiver in the 2022 TOS applies, as well. ECF No. 20-7 at 8–9; *see Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (affirming enforcement of class action waiver in arbitration agreement).

1. UnitedHealth Group Inc.'s Motion To Compel Individual Arbitration and Stay Proceedings (ECF No. 15) is **GRANTED**;

2. The parties are directed to proceed to individual arbitration in accordance with the 2022 Online Services Terms of Service;

3. This case is **STAYED** pending the outcome of individual arbitration;

4. The parties shall jointly notify the Court of the status of the arbitration within ninety days of the entry of this Order, and every ninety days thereafter while the arbitration remains pending; and

5. Upon resolution of the arbitration, the parties shall promptly and jointly file a letter informing the Court whether any further action in this Court is necessary, including enforcement of any arbitral award or dismissal of this case.

Dated: September 11, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge